Good morning, your honors. May it please the court. James Shaw on behalf of the appellants Brian Wolin and Kenneth Gable. I respectfully request two minutes for rebuttal, your honors. The issue presented today is whether the district court erred in holding that class certification must be denied in a products defect case unless a plaintiff can prove by credible evidence that a majority of the units at issue manifested the defect. Appellants respectfully submit, your honors, that the district court abused its discretion in denying certification on this basis and that it is not a plaintiff's burden at class certification to prove that a majority of an affected unit manifested a defect. Moreover, that it's not plaintiff's burden at trial to make that showing. Let me just get right to, directly to the issue here. How do you respond to Land Rover's arguments that this case is just like the Butter case because it would be difficult or impossible to determine on a class-wide basis whether performance injuries, related injuries, are attributable to the alignment defect in the cars? The court relied principally on that Florida State Court case, and I think that there are a number of distinctions. First and foremost, Butler was a brake pad case. And as has been bandied about in the record, a wearable parts issue to the extent that there's a distinction. The defect at issue with the Land Rovers deals with the alignment geometry of the vehicles. It's a structural issue. It manifests by way of tire wear and premature and irregular tire wear, but the fundamental defect is to the alignment geometry. The Seventh Circuit recently addressed this very issue in a case called Pella v. Staltzman. It's a 2010, a May 20th, 2010 case. Did you cite that in your report? We didn't. It's a May 20th of last month decision. All right. So you submit to the clerk the citation so that counsel in court may have it. Certainly. After the argument. Certainly. But that case dealt with an alleged defect with Pella's casement windows. And there the defendant argued that there are a multitude of reasons why a window may rot. And the issue there was that water was seeping in, leading to premature rotting. And the defendant argued that it dealt with, there could be installation issues, that there could be weather condition issues, where is the window in a particular structure. And the Seventh Circuit there disregarded those and said, Look, as long as there's a significant underlying common issue, there, the significant underlying common issue was, was there a design defect with the windows causing them to rot prematurely. The fact that there are potential issues regarding, individual issues regarding proximate cause and individual damages does not preclude certification. And the Seventh Circuit in the Pella decision actually upheld the district court certification of the class there. And I would also note that the Seventh Circuit made the point there that the fact that there may be obstacles in certifying consumer cases does by no means mean that they should not be certified. And I think that's an important point because in Land Rover's papers here, Your Honors, it's made very clear that it is seeking immunity. And it is cited in string sites cases which don't stand for this proposition, but which Land Rover says stands for the proposition that these types of wear part cases in vehicles are just not well suited for certification. What about the argument that some of the plaintiffs may not have served, may not have suffered any injury at all? And Land Rover makes that argument, and the district court below adopted some of the Butler reasoning on that. But with respect to that issue, the case law is legion, that a class as defined does not have to be a quote, unquote, manifestation only class. And, in fact, the Seventh Circuit in a recent decision, Cohen v. Pacific Investment, just stated that a class is likely and, in fact, is going to inevitably, in most cases, include class members who haven't been damaged, and that that doesn't preclude certification. What the issue is, is a class becomes problematic not in those circumstances, but where it includes class members who could not have been damaged by a defendant's conduct. Although, even if you can make out a claim for a class because of a common issue of law or fact, you still have the B3 issue as to whether or not this would be a superior avenue for resolving these cases. And unless I'm misunderstood, I think they make some argument that there's such individualized factors associated with individual consumers of the Land Rover that it's going to be difficult, if not impossible, to separate the individual factors from the class factors. And under B3, predominance by its very nature is such that there's going to be a balancing. It presupposes and assumes that there's going to be some individual issues. But with respect to predominance, Land Rover speculates as to the potential impact of a multitude of elements under inflation, over inflation. But again, as in the case with Pella, where there's an underlying concrete common issue here with respect to whether or not there was a defect, those issues can properly be addressed in the context of a manageable trial. And I would point to the recent decision out of this court in Dukes v. Walmart, where the court concluded that from a predominance element standpoint under B3, that the class action mechanism was superior, even though you're talking about discrimination affecting some 300, 400 stores potentially. Also, in the Jaleo v. Esteta Marcos case, this court concluded that dealing with damages relating to torture, that those types of cases, that those types of determinations could be done in the class context. And we would respectfully submit, Your Honors, that if in the context of nationwide discrimination in the country with the country's largest employer,  if those can be deemed to be appropriate for certification, that calculating damages relating to replacing tires on a vehicle is certainly appropriate from a predominance standpoint. Going back to Your Honors' point about Butler and with respect to manifestation, I would just point out that there are innumerable cases that discuss the fact that a class as certified need not include only people who manifested the defect. I point to the Daffin case out of the Sixth Circuit, which is cited in our papers. I point to Chamberlain out of this circuit, where the class as defined and as upheld by the Ninth Circuit included all vehicle owners and lessees of vehicles that contained the allegedly defective engine. What would the remedy be? I mean, if the class is certified, what would the remedy be, especially for class members who could not substantiate that they had additional tire wear? In terms of what would the remedy be for class members who never had the defect manifest, Your Honor, under that circumstance, a trial, just as in any case, class or non-class case, you would present through expert testimony, damage calculations based on manifestation rates as we see them and as our experts see them, and come up with a simple damage calculation, just like as reflected in the record Land Rover did when it became aware of this defect and calculated that it would cost $35 million if it complied with its warranty obligations. And then as the record reflects, notwithstanding the fact that the National Warranty Manager said that Land Rover's approach here, which was to not disclose a defect and to provide a pro rata reimbursement as opposed to a full reimbursement, was in direct violation of Land Rover's warranty policy. So I think one of the important things here with respect to what the district court did is that under Dukes, a merits determination, merits inquiry at all, is only permitted to the extent that it speaks to one of the Rule 23 elements. And what the court did below here in terms of concluding, notwithstanding an inordinate amount of evidence that this was a significant problem, concluding that certification should not be denied because of a lack of credible evidence that it manifested in the majority of vehicles, that is a standalone merits determination that doesn't bear at all on Rule 23. And I think where the court deviated from what the Butler court did is that in Butler, the court actually looked at manifestation rates within the context of commonality. Because in the brake pad case, there was evidence that over the several years of the design of the brake pads that it had changed substantially, both in composition and parts, such that it wasn't even interchangeable. So what the court in Butler did is it said, look, in the first year, there was 78% complete rate. In the last year of the proposed class, there was a 7% complete rate. Has this alignment changed? It has. Over the two models, there's no dispute that these are the same vehicles, the same geometry alignment. And in fact, the technical service bulletin that was issued by Land Rover applies equally to all of the vehicles in the proposed class. They're all included under the TSB. So it's a far cry from the substantial design changes that occurred throughout the time frame in the class in the Butler decision. All right. Counsel, Judge Gould, with a question for you, please. Yes, Your Honor. And I have the same question for your opposing counsel. I think it may relate to the Rule 23B3 requirement that a class be superior in other ways to resolve the dispute. So my question is, could these Land Rover owners, could they mount individual attacks or claims against the manufacturer, claiming a defect in design affecting the alignment? Or is the cost of doing that and the need for experts just too great for an individual consumer to make such a claim, given the amount at stake? Your Honor, I think that it's unquestionably the case that the costs involved in mounting thousands of individual cases against Land Rover under these circumstances makes it completely impracticable for people to proceed on an individual basis. In this case alone, as a result of where the vehicles were designed and manufactured and where the document trail led us, we've reviewed hundreds of thousands of pages of documents. There's been numerous experts involved. Depositions have occurred, including personnel in the United Kingdom. Just as a matter of course, when you're talking about the replacement cost of several tires, to anticipate and expect that consumers around the country are going to be able to mount, on an individual basis, this type of charge against a company such as the appellee here, it's certainly not practicable, and it is by no means the most superior method of dealing with what is admittedly, in their own documents, a known uniform design defect. This is what under Amchem I would respectfully submit is exactly the type of fact pattern that presents a core class action that Rule 23 contemplates. Thank you, counsel. You have less than two minutes. I'll give you two minutes for a rebuttal. Thank you, Your Honor. Thank you, Your Honor, and may it please the Court. My name is Christopher Handman on behalf of Jaguar Land Rover in North America. Let me begin with Judge Gwynne's first question, because I believe counsel conceded that in those cases in which there are modifications throughout a particular product over the years, that that does make a case particularly unsuitable for class certification. And the answer, Judge Gwynne, is that the models on the alignments did change. And you can find that at page 96 of our supplemental ER, paragraph 37 of our expert's declaration. They changed in March of 2006, September 2007, September 2006, and January 2007. In each of those occasions, the alignment was adjusted by a significant factor, precisely to address the concern that arose in some of the vehicles. So you would have a question of impracticality when trying to try this on a class-wide basis, because at least those owners of the 2006 model year, it would not be clear which of their vehicles had a particular alignment. So there alone is just one of the many imponderables that I think a district court would have to deal with in trying to manage this litigation. But the problems run deeper still with trying to do this on a class-wide basis. And that's because, as Judge Nelson, as you recognized, in Butler and in Sandman and in a number of cases, courts have acknowledged that where you have a wearable part that is subject to individual use factors, it is impossible to try that on a class-wide basis. Even if you have a common question at an abstract level, is this product on some level defective? That's not enough, because ultimately questions of damages arise. And that's an important point, Judge. When you mentioned what is the remedy here, what the plaintiffs are asking for here is not an injunction to repair a defective part. Their claim is based on costs that they have incurred with respect to the tires that have worn prematurely. That's not an inquiry that admits of any class-wide proof. Each member of the class would have to demonstrate that their particular tire wore as a result of a particular defect. Take a claim under the California Consumer's Law saying that the vehicle is represented, did not conform with, or that there was a duty to make certain disclosures that would have diminished the value of the vehicle at the time of purchase. No, because this is not brought under California law. The Gable is a Michigan case in Woolinton. I thought there was an equivalent Michigan state consumer statute that they made at least one claim under. Yes, and they have done that with respect to those unfair competition laws. Is there kind of a uniform proof on that that the vehicle as represented would be worth more than the vehicle as delivered? No, and for two reasons. The first is that the request that they have for a remedy with respect to the unfair competition is not the damage that they're requesting is not of that vintage. You can actually find that at paragraph 32 of the Gable complaint. That's their request for relief with respect to the unfair competition. It's, again, based expressly on the cost for the tires. But even if they had structured their complaint to conform to just that type of diminution in value, you can't try that on a classified basis, and here's why. The defect they've alleged is not a uniform defect. Despite the refrain we hear from opposing counsel, there is no concession that this is a uniform defect in the way you see in the Sixth Circuit Staffing case or the Oklahoma case in Cuesta that they cite. What they have alleged is that the geometry, the alignment does, in fact, fail. But Land Rover certainly never conceded that was a uniform defect. They base this notion of a uniform conceded defect on the idea that Land Rover issued this service bulletin to all of their technical departments. But, of course, they didn't. They had no way of knowing in advance which vehicle was going to have this problem, so it was a prophylactic notice that if a vehicle comes in. Let me ask you about that. After they found about the defect, they told the dealers to make deals with the people who came in, and they did it on a case-by-case basis. Yes. So why couldn't that apply to a class action? Oh, I think what you could do on a class – you can't do that on a class-by-basis because you wouldn't be able to know in advance who had this defect in their car, and to the extent that the defect manifests – and, again, this is the key point – their claims are based on the wear that that defect made on their tires. But if you awarded damages based on your own estimate of what it would cost to repair all the Land Rovers and take that as a sum and let individual plaintiffs then apply under that damage award, why wouldn't that work? Well, because I don't think that that would be an appropriate way to deal with the damages in this case. You would be awarding plaintiffs potentially who had suffered no problem whatsoever. No, you wouldn't give them. You would award the damages based on your own estimate of what it would cost to correct the alignments, and then individual plaintiffs would have to apply for damages under the total amount that was – they wouldn't get something if they hadn't had any damage. Well, but then – but even try to then determine who had the damages itself, an inquiry that's not going to admit a classified proof. That's the key point here, is because this is not a claim that's limited just to fixing the alignment. It's a claim based on damage suffered to tires. There is no way to determine. Because of the alignment. The commonality that goes through this is the alignment is imperfect. It may have been tweaked at various years, but the commonality, as I see it, and I may be wrong, and correct me if I'm wrong, is this alignment. And then different tires wore differently in different cars, but there is a commonality here. Oh, but there isn't, because although they have alleged that there's a uniform defect, the record shows that there's nothing of the source. Their own plaintiffs' expert recognized that not every Land Rover is going to have an alignment problem. Even though they have alleged this is a uniform alignment problem, their expert conceded it wasn't. You'll find that at pages 115 to 117 of our S.E.R. He expressly acknowledged he has no idea which Land Rover vehicles will have an alignment problem. Not which Land Rover vehicles will even have tire wear. That's an entirely separate question. But even which will even have this defect. That takes this case out of a commonality analysis of the cases that the plaintiffs have cited, where there's no dispute that all Hondas, for example, had a faulty accelerator pedal, or all types of vehicles had a faulty throttle, as in the Daffin case. Okay, I don't want to press this too far, but how did you come up with the estimated cost of repairing the defect? Oh, there's no estimated cost of repairing the defect. There's an estimate of how often this defect would manifest. And that was based on the number of cars that came in and reported improper tire wear. And from that, Land Rover predicted that there was a failure rate of about 3.6 percent or so. Why wouldn't that apply here? Because, again, it's based on there's no ability to assess a common defect. The very threshold for this case would have to be did these cars suffer an alignment defect that was common. There's no way to do that because even alignment itself can be subject to a multitude of factors. It's not like the engine at issue in Chamberlain that isn't, that's immune from individual use factors. Alignments can be knocked out of condition because of hitting the curb, because of going over potholes, because of an improper servicing, because the car simply settles too much. There are so many reasons why a car may or may not be out of alignment that there's no way to try this case on any class-wide basis. How's that much different than Daffin? Because in Daffin, that was a ---- It hadn't manifested itself in every single instance, had it, the defect? Right. And that's the key point because that goes to the remedy that Your Honor asked about. In Daffin, there are two key distinctions that don't apply here. The first is that the type of defect alleged there was indeed a uniform defect. That's to say all the throttles in the car ---- I thought it had much to do with, it varied quite a bit as between individual consumers, I thought. No, no. The throttle was acknowledged to be the same, and the question in Daffin was, again, based on the limited nature of the cause of action. It was a breach of warranty action there, which is an important point because the remedy was simply if the car is defective, whether it's manifested or not, as long as we can try on a common basis that this throttle is defective, then everyone can come in and get the money to repair that defective part. You don't have that here. There's not an identification of a single defective part that they've offered. They don't say, for example, that a bushing was defective or that a tire rod was defective. Instead, it's an amorphous allegation that the alignment geometry as a whole was defective. But that's an important point to keep in mind because the alignment geometry can become out of alignment for any number of reasons, and that's why, again, their expert at pages 116 and 117 acknowledged that there's no way of knowing which Land Rover vehicle would even have an alignment deficiency. That's what distinguishes this case from Daffin. It distinguishes it from Cuesta. I'm wondering because I'm looking at the language of Daffin, and I thought the Sixth Circuit was fairly clear that you're conflating the issue of proof at trial to the certification issue. No. That individual consumers may have trouble making a claim or making proof at trial, but that we're not supposed to let that override the superiority analysis. Whether a consumer will have a problem proving their case is different from whether the case can be proven on a class-wide basis. And I think those are important points, points that the Court en banc clarified in the Dukes case. It's entirely appropriate. In fact, it's the district court's obligation to ensure that the claims can be tried on a class-wide basis. And to do that, the district court has to look behind the pleadings and figure out, is this the sort of claim that a class can come in and say, here's our evidence, and it applies categorically? That's different from saying you might not be able to simply prove your case on a bilateral basis. If the geometry is defective, but it will only manifest itself 10% of the time, are you saying that, and it's uniform in terms of the geometry being defective, you're saying you couldn't maintain a class action? No. I think, well, I think if you take a different type of part, for example, where you don't have a wearable issue, where it's not subject to individualized use, for example, a throttle as in DAFN, a 10% manifestation rate would be fine. I think you could properly certify a class. The problem in this case isn't the manifestation. The problem instead is the individuality. The problem is that the defect here can't be assessed on a class-wide basis. You can't look at this car and say, that bushing is defective, as you could in DAFN say, that component was defective. Unlike Cresta, which dealt with an accelerator pedal, you can't say that pedal was designed in an improper shape. Here, they simply allege the alignment falls out, but it's not clear why. Does their expert say why the alignment's defective? No. Their expert acknowledges that, based on Land Rover's own documents, that the alignment, sorry, the suspension can settle, and if it settles too excessively early on in the production, it can cause the tires to flare out in that tow-out condition. But as Land Rover's own service bulletin recognized, and the service bulletin's at 217 of the SER, that tow-out condition can occur for any number of reasons, and this alignment issue only appears on, quote, certain vehicles, end quote. So their expert was asked multiple occasions whether this, he could identify anything, he can't identify a single point, and he was even asked about Land Rover's technical service bulletin, where Land Rover said this will not manifest on every car, this alignment issue. And he said, do you have any reason to doubt the legitimacy of that? And he said he had no opinion to think that what Land Rover was saying was wrong. So that gets to the essence of this case. You have essentially two categorical problems here. In the first instance, there's no way to determine whether there even is a uniform defect, but even if there is a uniform defect, there's no way to meaningfully determine the causation. And the causation's the key question. Their claims are all based on this idea that this defect caused damages to tires. It's the same sort of issue that this court dealt with in the Zinsser case, where you have issues, even common issues, as Judge Nelson recognized, of defects. It doesn't necessarily, there was a pacemaker. But just because there may be a common question about is the pacemaker designed defectively doesn't answer the question whether you can resolve on a class-wide basis the questions of causation and damages. Was this particular plaintiff who suffered damages from the pacemaker damaged as a result of that negligence? Was, as this court recognized, damaged by a result of the doctors implanting it? As a result of improper servicing, negligent shipping in the meantime? There are so many types of issues that can interfere. Counsel, Counsel, Judge Gould with a question for you. I really would like you to address the question I asked your opponent. I'm familiar with Zinsser because I think I probably wrote that one. And the main difference in Zinsser in this case is that if a person has a pacemaker put in and it doesn't work right, they probably can't assert a claim. The economic stakes are going to let them use different means. Now, in this case, my concern is that these purchasers have, there's no other alternative for them if there can't be a class action. I guess your technical issues are you dispute that there are predominant common issues under B3, and you also dispute that a class is a superior way to resolve this dispute. So my question is, is a class really the best way, assuming the other elements can be matched? No, it's not. And for reasons that Your Honor pointed out in the Zinsser opinion, the superiority, the class device is not a superior mechanism where individualized issues are going to predominate over these common questions. And the key point here is that this is not a case for diminution in value. These are claims and class was attempted to be certified on the basis of ultimate damage to these tires. Whether the plaintiffs could have certified a different class that would have been narrower, whether they could have certified a B2 class, and that's an important point, the Dukes v. Walmart case was under B2. It was not under B3 as counsel suggested. So that, the finding of a large class there had nothing to do with commonality or predominance in those issues. The idea, though, that these plaintiffs may not be able to try this on a class-wide basis makes this like all the other cases involving automotive parts where courts have recognized that it's not amenable. The question of whether a plaintiff will have the resources or whether a plaintiff might wish to try this doesn't trump the threshold question, are there predominating common questions? And here you do have the opportunity under Lemon laws and small claims courts to pursue attorney's fees and costs, which mitigates the concerns that courts have often articulated about the inability of plaintiffs to prosecute this. Well, thank you, counsel. We understand your argument. Thank you. We might all give you two minutes. Thank you, Your Honors. First, with respect to the notion that there was a series of changes to the alignment, there was no design change as between the 05 and 06 vehicles with respect to the platform or the alignment geometry. What Land Rover did is make small, subtle changes on several occasions to the tolerance to try to compensate for the known defect, but it didn't change the fact that the defect remained the same. It was like putting a Band-Aid to try to fix it, but that doesn't negate the fact that the platform and the defect was uniform, and I will also point out that during that period the TSB, the Technical Service Bulletin remained in place and still was equally applicable in the same fashion to each of the affected vehicles. With respect to damages, again, there's a lot of hypotheticals about what could cause tire wear, but as is in the record, Michael Snyder, a service manager from Palm Beach Land Rover, noted you don't see tire issues with other models. This was a unique circumstance in terms of having people flocking to dealerships regarding premature tire wear. In Haleo, I guess someone could argue that someone didn't break an arm because of torture, they broke an arm because they fell out of a tree. One can always posit certain things, but again, certain issues like that don't render certification inappropriate, where here you have an acknowledged defect, an acknowledged violation of a company's own warranty by its national warranty manager, the issuance of service bulletins that apply uniformly to all of the affected vehicles, the fact that Mr. Wozniak, our expert, acknowledged truthfully that he didn't know if it would manifest in every single vehicle is of no moment whatsoever. It ties in exactly with what the law is on you don't need to have a defect manifest in every circumstance. And again, with respect to the scope of the problem, after they toured nine dealerships on the East Coast to address this problem and they conclude that it's irreparably harmed the brand name, this is a big problem. There should be no blanket immunity. There should be no blanket immunity, particularly whereas here, the underlying facts are so compelling with respect to a common defect. Certification is appropriate. Thank you. Thank you, counsel. The case is well argued. The case is submitted. The Court is adjourned for the week. Where's Kelly?
judges: Gwin, Nelson D. W., Gould